UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Cynthia Lutz,** | **Civil No. 06-4876 (JMR/JJG)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Michael J. Astrue,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

Plaintiff Cynthia Lutz seeks judicial review of the final decision of the Commissioner of Social Security (the Commissioner), who denied her application for disability benefits under the Social Security Act.  Ms. Lutz is represented by Frank W. Levin, Esq.  The Commissioner is represented by Lonnie F. Bryan, Assistant U.S. Attorney.  The parties bring cross-motions for summary judgment (Doc. Nos. 11, 18), which are referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(a).

The final decision of the Commission is set forth in a decision by an Administrative Law Judge (ALJ) that issued on December 27, 2005.  (Tr. at 13.)  The ALJ determined that, because Ms. Lutz had not earned enough qualifying quarters of work credits, she was not entitled to disability benefits.  This decision was based on a finding that Ms. Lutz did not perform work for her spouse's trucking business.  (Tr. at 20.)

In the current litigation, Ms. Lutz contends the ALJ committed an error of law by failing to decide whether she was an employee of her spouse's business.  Ms. Lutz also argues that the ALJ committed another error of law because, though earnings from that business were attributed

to her spouse, a portion is properly reallocated to her.  Once that reallocation occurs, Ms. Lutz asserts, she will have enough qualifying quarters of work credits to obtain disability benefits.

The Commissioner counters that Ms. Lutz' employment status is immaterial, and the issue is whether she was showed her earnings from the trucking business.  The Commissioner thus argues that no error of law is involved, and to the extent the ALJ determined that Ms. Lutz had no earnings from the trucking business, the appropriate question is whether this finding is supported by substantial evidence.

**A.     Background**

On December 14, 2001, Cynthia Lutz (Cynthia) applied for disability benefits from the Social Security Administration (SSA).  In the reports Cynthia submitted with her application, she summarized her work history since 1988, but she did not mention any work in connection with her spouse's trucking business.  (Tr. at 44, 52.)  The SSA denied Cynthia's application initially and on reconsideration, finding that she did not have enough qualifying quarters of work credits to receive disability insurance.  (Tr. at 35, 38.)

Through a letter to the SSA on February 15, 2002, Cynthia claimed that she was a partner in her spouse's trucking business, Lutz Trucking, and that her earnings from the business would supply the needed work credits.  (Tr. at 62.)  In another letter on April 26, 2002, Cynthia claimed that she worked with her spouse in Lutz Trucking.  (Tr. at 60.)  Cynthia accordingly requested a hearing on these matters before an ALJ.  (Tr. at 68.)

The hearing took place on February 24, 2003.  In her testimony at the hearing, Cynthia admitted that she did not receive any salary for her work for Lutz Trucking.  And she was unable to explain why she did not disclose this work in the reports with her application.  Cynthia further

said that Lutz Trucking was a sole proprietorship owned by her spouse, Michael Lutz (Michael). (Tr. at 282-83.)

Michael also testified at the hearing. He said Lutz Trucking was his sole proprietorship, formed before he and Cynthia married. Consisting of a single semi trailer truck, Lutz Trucking provided long haul shipping as an independent contractor for another company, Sather Trucking; Michael was the driver. At some point, Sather Trucking agreed that Cynthia could join Michael on these trips and assist with driving, but it did not pay Cynthia any compensation, nor did it pay Lutz Trucking more. Michael added that, in addition to driving, Cynthia performed many other valuable tasks on the road, such as cooking, bookkeeping, and cargo handling. (Tr. at 285-89.)

In addition to the testimony, the ALJ received from Cynthia several letters as exhibits. One letter was from a dispatcher at Sather Trucking, who stated that Cynthia rode with Michael and assisted with his duties. (Tr. at 85.) Another was from an insurance underwriter for Sather Trucking, who said that Cynthia had been listed as a driver for Sather Trucking since April 1996. (Tr. at 89.) The remaining letters are from friends and family, who confirmed that Cynthia had worked with Michael on the road throughout the 1990s. (*See* Tr. at 90-99.)

In response to a request from the ALJ, Cynthia later submitted tax returns for the period from 1995 through 2000. In these returns, Cynthia did not disclose any income or wages from Lutz Trucking. (*See* Tr. at 118, 133, 150, 154, 160, 164, 169, 173, 181, 187.) The returns also show that Lutz Trucking paid $600 in wages in the years 1996, 1997, and 1999, but the returns do not indicate whether these wages were paid to Cynthia. (*See* Tr. at 105, 109, 111.)

The ALJ issued a decision on June 20, 2003. Because the tax returns failed to show that Cynthia received income from Lutz Trucking, and because Cynthia and Michael agreed that she was not paid a salary for her work for Lutz Trucking, the ALJ determined that Cynthia did not

3

show earnings from Lutz Trucking.  And because Cynthia did not mention earnings from Lutz Trucking in her tax returns or in her original application for benefits, and only claimed earnings from Lutz Trucking after her application for benefits had been denied, the ALJ also found that Cynthia's testimony was not credible.  The ALJ accordingly ruled that Cynthia had not earned enough work credits and that she did not qualify for disability insurance.  (Tr. at 204-06.)

Cynthia then appealed this decision to the SSA Appeals Council.  In the correspondence pursuant to this appeal, Cynthia chiefly argued that ALJ failed to determine whether Cynthia was an employee of Lutz Trucking.  (*See* Tr. at 227.)

Through a notice on June 3, 2004, the Appeals Council observed a new development in the matter.  According to SSA records, Cynthia and Michael had filed an amended tax return for 1999.  (Tr. at 222-24.)  The return showed that Cynthia had received $5,061 in self-employment income, and that Lutz Trucking had paid Cynthia a corresponding amount.  (Tr. at 259, 262.)

By an order on July 19, 2004, the Appeals Council remanded the matter to the ALJ for further hearing.  In that order, the Appeals Council observed that Cynthia had originally claimed to be a partner in Lutz Trucking, but now claimed to be an employee.  As a result, the Appeals Council asked for additional findings on this question.  (*See* Tr. at 233, 235.)

The Appeals Council further observed that, according to the tax returns from 1996, 1997 and 1999, Lutz Trucking paid only $600 in wages.  Yet the amended 1999 return indicated that Lutz Trucking paid several thousand more.  Thus the Appeals Council sought findings about this inconsistency.  It also asked for more proof on whether Cynthia made an agreement with Lutz Trucking for compensation; and if so, for documentation showing what was paid and in what amount.  (Tr. at 234-35.)

The remand hearing took place before the ALJ on September 1, 2005. Michael did not appear, and other than the amended 1999 return, the only new evidence consisted of additional testimony from Cynthia. Consistent with the amended return, Cynthia claimed that she earned approximately $5,000 in 1999. She first contended this was self-employment income—implying that she was a partner in Lutz Trucking—but then said that she was an employee. (Tr. at 300-02.)

Cynthia further testified that she was paid by the trip, but instead of receiving money, she was paid in the form of food and clothing. Although the food and clothing were paid out of the accounts of Lutz Trucking, Cynthia produced no documentation to support this contention, and she admitted Lutz Trucking did not issue a W-2 for this compensation. Regarding the $600 that Lutz Trucking paid in 1996, 1997, and 1999, Cynthia stated that it was paid to her, but she did not say what the compensation was for or why it was separately itemized. (Tr. at 305-06.)

The ALJ issued another decision on December 27, 2005. On the question of whether Cynthia was a partner or an employee, the ALJ noted that Cynthia offered inconsistent answers, sometimes implying that she was a partner and other times claiming that she was an employee. The ALJ then decided that this question was immaterial. Regardless of whether Cynthia was a partner or an employee of Lutz Trucking, the ALJ reasoned, the real issue was whether Cynthia could substantiate her income in 1999 and thus obtain additional work credits. (Tr. at 19-20.)

Turning to that question, the ALJ observed that Cynthia did not receive a W-2 from Lutz Trucking in 1999. Assuming that she was paid in solely with food or clothing, the ALJ added that there was no documentation correlating this compensation to work Cynthia performed. On the $600 in wages reported on the original 1999 return, the ALJ further observed that there was no evidence of a check or W-2. The ALJ implied, therefore, that there was no way to reconcile

the $600 on the original 1999 return and the $5,061 on the amended 1999 return.  (*See* Tr. at 19-20.)

The ALJ accordingly ruled that Cynthia did not establish any qualifying quarters of work credits for 1999, and therefore, that she was not entitled to disability insurance.  The ALJ further directed the SSA to alter its records accordingly, directing that the $5,061 on the 1999 amended return be allocated to Michael rather than Cynthia.  (Tr. at 20.)

Cynthia appealed this decision to the Appeals Council as well, but this time, it summarily denied the appeal by a notice on October 18, 2006.  (Tr. at 5.)  She now brings her current action for judicial review.

**B.     Discussion**

Cynthia Lutz asserts that, because the ALJ committed errors of law, the decision of the ALJ is subject to de novo review before this Court.  The Commissioner contends that Ms. Lutz (Lutz) is challenging the factual findings of the ALJ, and therefore, the appropriate question is whether those findings are supported by substantial evidence.  The parties, therefore, cannot even agree on the issue to be decided by this Court.  For this reason, this Court must decide how to frame the parties' arguments before selecting an appropriate standard of review.

In denying Lutz' application, the ALJ determined that Lutz had insufficient work credits to qualify for disability benefits.  The underlying factual question, in this context, was whether Lutz should have received credits for work she allegedly performed for Lutz Trucking.  Though Lutz claims that she performed work for Lutz Trucking from 1995 through 2000, the parties have chiefly disputed whether such work was performed in 1999, and the record thus focuses on that year.

Lutz initially argues that the ALJ erred by failing to determine whether she was a partner or an employee of Lutz Trucking. For this argument, the underlying issue is whether Lutz' status as an employee affects how her work credits are calculated.

Under relevant SSA regulations, employment status is most significant in the context of how a person reports earnings. If a person earns income as an employee, that person may rely on the employer to report the employee's income and to withhold social security taxes. If a person is self-employed, however, then that person must report self-employment income and pay social security taxes accordingly. To distinguish these circumstances, the regulations call earnings from employment "wages" and earnings from self-owned businesses "self-employment income." *See* 20 C.F.R. §§ 404.1001.

SSA regulations further indicate that, regardless of whether a person earns wages or self-employment income, work credits are calculated the same way.[1] 20 C.F.R. § 404.140(c) (setting out the general rule for work credits from "both wages and self-employment income"), 20 C.F.R. § 404.143(a) (calculating work credits from "the total wages paid and self-employment income credited . . . in a calendar year"). The ALJ correctly ruled that Lutz' status as an employee is immaterial to how her work credits are calculated, and so this Court need not decide whether the ALJ erred by failing to rule on whether Lutz was an employee.

Lutz next argues that the ALJ improperly allocated income that she earned to her spouse. But this argument necessarily requires a finding that she received earnings from Lutz Trucking. To prevail on this argument, therefore, she must first establish that the ALJ erred in finding that Lutz had no earnings from Lutz Trucking. That challenge is appropriately considered first.

---

[1] The sole exception to this rule is that, where a self-owned business maintains a fiscal year that is different from the calendar year, self-employment income is prorated to the appropriate calendar years before work credits are calculated. *See* 20 C.F.R. § 404.144.

7

Framing the dispute in this way, this Court can now supply the proper standard of review. When reviewing the findings of the ALJ in this context, a court examines whether the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).

When assessing whether there is substantial evidence, a court must consider the evidence that supports, and that which contradicts, the findings of the ALJ. *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998). If more than a scintilla of evidence supports the findings, they must be upheld, even though substantial evidence might also support a contrary outcome. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).

The record shows that, according to testimony from Lutz and her spouse, she worked for Lutz Trucking for several years. This testimony is corroborated by others associated with Sather Trucking, who confirm in their letters that Lutz rode with her husband and shared in some of his duties. To show that she received compensation for this work, Lutz represents that she was paid in the form of food and clothing, and this payment is evidently reflected on the amended 1999 return.

Assuming Lutz did work for Lutz Trucking, she did not receive any W-2s or any other documentation of her income. She also failed to report this income in her tax returns at the time she allegedly earned it. It is not possible, therefore, to verify how much work Lutz performed or whether she received food and clothing in exchange for particular work. And Lutz was unable to explain the discrepancy between the $600 in the original 1999 tax return, allegedly paid to her as cash wages, and the $5,061 reported in the amended 1999 tax return.

8

When Lutz initially filed her application, she did not disclose that she performed work for Lutz Trucking. She only did so after she learned that she had insufficient work credits to qualify for disability insurance. And Lutz also failed to provide a consistent account of her role with Lutz Trucking, sometimes saying that she was an employee, but other times suggesting that she was self-employed and thus had a stake in the business.

From Lutz' testimony and supporting documentation, the record might support a finding that she had earnings from Lutz Trucking in 1999. But the record likewise supports a contrary finding, based on the fact that Lutz did not initially report her earnings and that she was unable to produce contemporaneous records of those earnings. In these circumstances, there is more than a scintilla of evidence to support the findings of the ALJ.

When the ALJ determined that Lutz had no earnings from Lutz Trucking, therefore, that finding was supported by substantial evidence. As a result, Lutz cannot argue that her earnings from Lutz Trucking were improperly allocated to her spouse. Because Lutz has not supplied any other reason to overrule the ALJ's decision, her motion for summary judgment is appropriately denied; and because the Commissioner has conversely shown that the decision is supported by substantial evidence, his motion is appropriately granted.

**C.      Recommendation and Conclusion**

To the extent Lutz challenges the ALJ's failure to decide whether she was an employee of Lutz Trucking, the issue is immaterial to whether she had sufficient work credits to qualify for disability benefits. And where Lutz contends that the ALJ's misallocated her income from Lutz Trucking to her spouse, Lutz implicitly challenges the ALJ's finding that she earned no income from Lutz Trucking. Because this finding is supported by substantial evidence, Lutz' argument

here fails as well. This Court thus concludes that Lutz' motion for summary judgment should be denied and that the Commissioner's motion for summary judgment should be granted.

Being duly advised of all the filed, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Lutz' motion for summary judgment (Doc. No. 11) be **DENIED.**

2. The Commissioner's motion for summary judgment (Doc.No.18) be **GRANTED.**

3. This litigation be dismissed in its entirety and judgment entered.

Dated this 19th day of June, 2008.

s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge


**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **July 7, 2008**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.